IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOSEPH E. GERBER,
an individual,

       Plaintiff,                    No. CIV S-07-0785 WBS JFM PS

    vs.

CITIGROUP, INC., etc., et al.,

       Defendants.           <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Plaintiff is proceeding pro se[1] with a complaint challenging the handling of his credit card account alleging, *inter alia*, violation of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq. This case was referred to the undersigned pursuant to Local Rule 72-302(c)(21). Pending before the court is a motion to compel arbitration and stay action filed on June 21, 2007, by defendant, Citibank (South Dakota), N.A. Plaintiff has filed an opposition.

        In the instant motion, defendant Citibank seeks to compel arbitration pursuant to a binding arbitration agreement allegedly contained in plaintiff's credit card agreement. Defendant argues the credit card agreement, dated 2000, resulted in plaintiff's original debt, and requires

---

[1] The California State Bar website lists plaintiff as an inactive member of the state bar. http://members.calbar.ca.gov/search/member_search.aspx?ms=Gerber%2C+Joseph.

1

plaintiff to submit the instant action to arbitration based on South Dakota law. (Manfredi Decl., Ex. 1.)

Because the agreement between plaintiff and defendant is a "contract[] evidencing transactions involving commerce," the agreement is subject to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2; Chiron Corp. v. Ortho Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000). The FAA confers on the parties involved the right to obtain an order directing that arbitration proceed in the manner provided for in a contract between them. 9 U.S.C. § 4; Volt Info. Sciences, Inc. v. Bd. of Trustees, 489 U.S. 468, 474-75 (1989); Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 58 (1995).

The threshold inquiry here is whether the parties agreed to arbitrate the disputes at issue. Leicht v. Bateman Eichler, Hill Richards, Inc., 848 F.2d 130, 132 (9th Cir. 1988); Mitsubishi Motors Corp. v Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). "Under § 4 of the FAA, a district court must issue an order compelling arbitration if the following two-pronged test is satisfied: (1) a valid agreement to arbitrate exists, and (2) that agreement encompasses the dispute at issue." United Computer Systems, Inc. v. AT&T Corp., 298 F.3d 756, 766 (9th Cir. 2002). If the response is affirmative on both counts, then the FAA requires the court to enforce the arbitration agreement in accordance with its terms. Chiron, 207 F.3d at 1130; Volt, 489 U.S. at 474-75 (FAA only confers "right to obtain an order directing that 'arbitration proceed *in the manner provided for in [the parties'] agreement.*'" (emphasis in original)).

To the extent there are ambiguities in contract terms, the common law rule of construction against the drafter applies. Mastrobuono, 514 U.S. at 62 (1995). Particular ambiguities as to the scope of arbitration must be construed in favor of arbitration. Volt, 489 U.S. at 475; see also Moses H. Cone Memorial Hospital v. Mercury Construction Co., 460 U.S. 1, 24-25 (1983). Moreover, a document "should be read to give effect to all of its provisions and to render them consistent with each other." Mastrobuono, 514 U.S. at 63.

In the instant action, it is undisputed that Universal Bank, N.A. ("Universal Bank") issued plaintiff a credit card in 1995. Defendant Citibank merged with Universal Bank in January of 2002 and became the issuer of plaintiff's account. (Manifredi Decl., at 2-3.)

Defendant Citibank has provided what it describes as an exemplary Cardmember Agreement. (Manifredi Decl., Ex. 1.) The first page of the exemplar is entitled "Important Notice of Change in Terms," and states that "[a] number of changes are being made to the terms of your Cardmember Agreement. This page summarizes certain of those changes, whose titles are listed below." (Id.) Page 3 contains a subheading entitled "Cardmember Agreement." (Id. at 3.) The exemplar contains a copyright date of 2000 (id. at 13), but is imprinted with "UCIT-GEN 12/99" on page 14. Defendant Citibank contends the agreement was effective in 1999; plaintiff argues it could not have been effective prior to the copyright date. In any event, plaintiff denies having received the exemplar document.

No party has provided the original agreement from 1995, nor an exemplar agreement effective in 1995 when plaintiff's credit card was first issued by Universal Bank. While defendant argues that plaintiff was bound by subsequent change in terms notices mailed to him, this court is unable to evaluate the change in terms without benefit of the initial agreement. Defendant has provided no evidence that the initial agreement contained a provision that plaintiff would be subject to change in terms notices mailed to plaintiff; nor has defendant provided any evidence that the 1995 agreement bound this court to follow South Dakota law. Indeed, a close reading of the exemplar document reflects that "[t]he terms and enforcement of this Agreement shall be governed by federal law and the law of Georgia, where we are located." (Manfredi Decl., Ex. 1, at 13.) But there is no evidence before the court that Universal Bank was located in Georgia in 1995, when the initial agreement issued, or that the 1995 initial agreement also provided that Georgia law would apply. Accordingly, this court will apply California law.

Under California law, on these facts, plaintiff is not bound to change in terms notices mailed to his home address. Badie v. Bank of America, 67 Cal.App.4th 779, 79

Cal.Rptr.2d 273 (1998) (where initial original agreement was ambiguous as to whether it could be unilaterally amended to include an arbitration clause, bank could not amend the terms of credit card account agreements by adding an arbitration clause, despite provisions in the account agreements authorizing the bank to change terms of the accounts).  Here, it is clear the initial agreement did not contain an arbitration requirement or Universal Bank would not have attempted to modify the initial agreement to include the arbitration clause.  (Manifredi Decl., Ex. 2.)  In addition, there is no evidence that the original agreement allowed unilateral amendment by Universal Bank or allowed Universal to add terms by sending plaintiff a notice to which he must respond in order to avoid having the new term added.

> The exemplar document includes paragraphs that state:
>
> Changing the Agreement:
> We can change the Agreement, including all fees and the annual percentage rate, at any time. . . .  Your decision to keep your account open after any charge will constitute your agreement to the change.

(Manifredi Decl., Ex. 1, at 12.)

> The terms set forth below in the revised Cardmember Agreement will become effective automatically unless you notify us on or before February 29, 2000 that you do not accept these terms.  If you do not accept these terms, then your account will be closed, and you will be obligated to pay off any remaining balances in the same manner and under the same terms that were in effect prior to these changes.  You may notify us of your non-acceptance by calling 1-800-796-3689; please have your account number available.

(Manifredi Decl., Ex. 1, at 2.)  While these paragraphs are not expressly referenced in the "Important Notice of Change in Terms" section, the precatory language contained in the initial notice states "certain of those changes" were summarized, suggesting changes may have been included but not specifically referenced in the notice section.  Again, without benefit of the 1995 initial agreement, the court cannot discern whether these important clauses were in effect in 1995 such that the mailed notice of change in terms was sufficient to change the initial agreement terms, or to render effective the subsequent notice of change to require mandatory arbitration.

1   Because defendant has failed to demonstrate that plaintiff was bound to change in
2   terms notices mailed to his home address under California law, Citibank has failed to
3   demonstrate that a valid agreement to arbitrate exists.  Although the FAA incorporates a strong
4   federal policy of enforcing arbitration agreements, <u>Armendariz v. Foundation Health Psychcare</u>
5   <u>Services, Inc.</u>, 24 Cal.4th 83, 96, 99 Cal.Rptr.2d 745 (2000), that policy does not arise until an
6   enforceable agreement is established.  The instant record does not reflect that plaintiff agreed to
7   mandatory arbitration.  <u>Badie</u>, 67 Cal.App.4th at 790.  Thus, the court is not required to enforce
8   arbitration.  <u>Chiron Corp.</u>, 207 F.3d at 1130.  Accordingly, defendant's motion to compel
9   arbitration and for stay should be denied.

   Accordingly, IT IS HEREBY RECOMMENDED that Citibank's June 21, 2007
motion to compel arbitration and stay the action [docket no. 38] be denied.

   These findings and recommendations are submitted to the United States District
Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within ten days
after being served with these findings and recommendations, any party may file written
objections with the court and serve a copy on all parties.  Such a document should be captioned
"Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that
failure to file objections within the specified time may waive the right to appeal the District
Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 29, 2008.

_____
UNITED STATES MAGISTRATE JUDGE

/001; gerber.amd